## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KENNETH DUKETT,
an individual,                                                    Case No.:

      Plaintiff,

v.

CITIBANK, N.A.,
a national association, and
UNITED COLLECTION BUREAU, INC.,
a foreign for-profit corporation,

      Defendant.

_____/

## VERIFIED COMPLAINT

**COMES NOW**, Plaintiff, KENNETH DUKETT (hereinafter, "Plaintiff"), by and through the undersigned counsel, and hereby sues Defendants, CITIBANK, N.A. (hereinafter, "Citi") and UNITED COLLECTION BUREAU, INC., (hereinafter, "UCB") (hereinafter collectively, "Defendants"). In support thereof, Plaintiff states:

## INTRODUCTION AND PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer for Defendant's violations of the Florida Consumer Collection Practices Act, Chapter 559, Florida Statutes (hereinafter, the "FCCPA"), the Fair Debt Collection Practices Act, 15 United States Code, Section 1692 (hereinafter, the "FDCPA"), and the Telephone Consumer Protection Act, 47 United States Code, Section 227 (hereinafter, the "TCPA").

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court arises under 47 United States Code, Section 227(b)(3), 15 United States Code, Section 1692k(d), 28 United States Code, Section 1331, and supplemental jurisdiction exists for the FCCPA claims pursuant to 28 United States Code, Section 1367.

1

2.      Venue in this District is proper because Defendants transact business in this District, and the conduct complained of occurred in this District.

3.      At all material times herein, Plaintiff is an individual residing in Hillsborough County, Florida.

4.      At all material times herein, Citi is a national association existing under the laws of the state of South Dakota with its principal place of business located at 701 East 60th Street North, Sioux Falls, South Dakota 57104.

5.      At all material times herein, UCB is a foreign for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 5620 Southwyck Boulevard, Toledo, Ohio 43614.

## FCCPA AND FDCPA STATUTORY STRUCTURE

6.      The FCCPA is a state consumer protection statute, modeled after the FDCPA, a statute designed to prohibit unfair, deceptive, and abusive practices in the collection of consumer debts as well as to protect against the invasion of individual privacy.  15 U.S.C., §§ 1692(a) and (e); Fla. Stat. §§ 559.55 and 559.77(5).

7.      The FDCPA imposes civil liability on any debt collector—and the FCCPA imposes liability on any creditor/person as well as any debt collector—who "uses any instrumentality of interstate commerce or the mails in any business the principal purposes of which is the collection of any debts," or who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another" and both statutes prohibit engaging in particular violative conduct in connection with collecting consumer debts.  15 U.S.C. § 1692(a)(6); Fla. Stat. § 559.55(5).

8.      Specifically, the FDCPA and FCCPA prohibit unlawful debt collection "communication" with consumer debtors, which is defined as "the conveying of information

2

regarding a debt *directly or indirectly* to any person *through any medium*." 15 U.S.C. § 1692(a)(2); Fla. Stat. § 559.55(2) (emphasis added).

9.     For example, the FDCPA and FCCPA each prohibit a debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a consumer debt, and prohibits a person from communicating directly with a debtor known to be represented by an attorney in an attempt to collect a consumer debt.   *See* 15 U.S.C. §§ 1692(c)-(d) and Fla. Stat. §§ 559.72(7) and (18).

## TCPA STATUTORY STRUCTURE

10.     Congress enacted the TCPA in an effort to restrict pervasive use of automated or prerecorded telephone calls that invade consumers' personal privacy.  Pub L. 102-243, § 2, Dec. 20, 1991, 105 Sta. 2394 (1), (5), and (10).

11.     Congress intended to prevent automated or pre-recorded telephone calls as "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id*. at §§ (5) and (12).

12.     Under the TCPA, any person who initiates calls to any number assigned to a cellular telephone service using any automatic telephone dialing system or artificial or prerecorded voice without the recipient's prior express consent is liable to the recipient for actual monetary loss, or up to $500.00 in damages for each violation of the TCPA, whichever is greater.  47 U.S.C. § 227(b)(3)(B).

13.     Under the TCPA, the court may increase the damage award up to three (3) times, or up to $1,500.00, for each willful or knowing violation of the TCPA.  *Id* at § 227(b)(3)(C).

14.     Furthermore, the Restrictions on Use of Telephone Provision, 47, United States Code, Section 227(b)(1) prohibits any person:

(A) To make any call (other than a call made for emergency purposes

> or made with the prior express consent of the called party) using
> any automatic telephone dialing system or an artificial
> prerecorded voice – (iii) to any telephone number assigned to a
> paging service, cellular telephone service, … or any service for
> which the called party is charged for the call.

15.     Additionally, Plaintiff alleges that Defendants continued to call Plaintiff's cellular

telephone using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive

telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter,

"APV") in violation of the FCC Rule, 47 C.F.R. Section 64.1200(a)(1).

16.     One of the regulations prescribed under the TCPA is the Federal Communications

Commission ("FCC")'s rule, 47 C.F.R Section 64.1200 ("FCC Rule"), that implements the TCPA.

The FCC originally promulgated the FCC Rule in 1992, since which time it has subsequently been

amended as telecommunications technology has changed.

17.     In its current state, the FCC Rule, 47 C.F.R. § 64.1200, provides, in relevant part,

that:

> (a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate
> any telephone call (other than a call made for emergency purposes
> or is made with the prior express consent of the called party) using
> an automatic telephone dialing system or an artificial or prerecorded
> voice;
> . . .
>
> (iii) to any telephone number assigned to a paging service, cellular
> telephone service, specialized mobile radio service, or other radio
> common carrier service, or any service for which the called party is
> charged for the call.

## GENERAL ALLEGATIONS

18.     At all material times herein, Plaintiff is a "debtor" or "consumer" as defined by the

FCCPA, Section 559.55(8) and by the FDCPA, Section 1692a(3).

19.     At all material times herein, Citi is a "creditor" as defined by Florida Statutes,

Section 559.55(5).

20.     At all material times herein, Citi regularly extends credit cards to consumers in Hillsborough County, Florida and collects debts associated with the same.

21.     At all material times herein, UCB is a "debt collector" as defined by the FCCPA, Section 559.55(7) and the FDCPA, Section 1692a(6).

22.     At all material times herein, UCB uses interstate mail while engaging in a business, the principal purpose of which is the collection of consumer debts.

23.     At all material times herein, UCB collects or attempts to collect—directly or indirectly—debts owed or due to another, or asserted to be owed or due to another, from consumers in Hillsborough County, Florida.

24.     At all material times herein, Defendants attempt to collect a debt, specifically an alleged balance due on a consumer credit card referenced by account number ending in -0950 (hereinafter, the "Debt").

25.     At all material times herein, the Debt is a consumer debt, an alleged obligation resulting from a transaction for goods or services and incurred primarily for personal, household, or family use.

26.     At all material times herein, Defendants are each a "person" subject to Florida Statutes, Section 559.72.  *See* Fla. Stat. §§ 559.55(5), (7); *Schauer v. General Motors Acceptance Corp.*, 819 So. 2d 809 (Fla. 4th DCA 2002).

27.     At all material times herein, Defendants' conduct, with respect to the Debt complained of below, qualifies as "communication" as defined by Florida Statutes, Section 559.55(2).

28.     At all material times herein, Defendants acted themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties,

subrogees, representatives, third-party vendors, and insurers.

29.     All necessary conditions precedent to the filing of this action occurred or each Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

30.     Defendants made telephone calls, as more specifically alleged below, to Plaintiff's cellular telephone number 813-XXX-6512 (hereinafter, "Cellular Telephone") using an automatic telephone dialing system (hereinafter, "ATDS"), a predictive telephone dialing system (hereinafter, "PTDS"), or an artificial or pre-recorded voice (hereinafter, "APV").

31.     Plaintiff the possessor, controller, and regular user of a Cellular Telephone with assigned telephone number 813-XXX-6512.

32.     At no time herein did Defendants possess Plaintiff's prior express consent to call Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

33.     Further, if Defendants contends they did possess such consent at one point in time, Plaintiff nonetheless revoked any alleged prior existing consent the moment Plaintiff demanded that Defendants cease calling Plaintiff's Cellular Telephone and again revoked any alleged prior express consent the moment Plaintiff advised Defendants that he was represented by an attorney with respect to the Debt and provided Defendants with said attorney's contact information.

34.     Additionally, if Defendants contends the below-referenced phone calls were made for "informational purposes only," Defendants nevertheless lacked the required prior express written consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, a PTDS, or an APV.

35.     On or about February 5, 2019, Plaintiff retained The Law Office of Eva M. Donohue, P.A. (hereinafter, "Eva Donohue") with respect to his debts generally, including the Debt.

36.     On or about February 5, 2019, Plaintiff sent a facsimile transmission (i.e., fax) to Citi regarding Plaintiff and the Debt (hereinafter, "Notice of Representation).  Please see attached a true and correct copy of said Notice of Representation labeled as Exhibit "A."

37.     Specifically, the Notice of Representation advised Citi of Eva Donohue's legal representation of Plaintiffs with respect to the Debt, provided Citi with Eva Donohue's contact information, and advised Citi that all direct communication to Plaintiff must cease and should instead be directed to Eva Donohue's office.  *See* Ex. A.

38.     Moreover, the Notice of Representation explicitly advised Citi "I am hereby revoking any prior express consent that I may have given to receive calls, especially to my cellular telephones, from an Automated Telephone Dialing System, or a pre-recorded voice."  *See* Ex. A.

39.     Citi received the Notice of Representation.

40.     Citi made telephone calls to Plaintiff's Cellular Telephone from telephone number on the following dates and times, and from the following telephone numbers:

| (a) | 2/12/2019 | 8:34 a.m. ET | (816) 420-4632 |
| (b) | 2/12/2019 | 5:17 p.m. ET | (816) 420-4632 |
| (c) | 2/13/2019 | 2:18 p.m. ET | (816) 420-4632 |
| (d) | 2/13/2019 | 3:54 p.m. ET | (816) 420-4632 |
| (e) | 2/14/2019 | 8:27 a.m. ET | (816) 420-4632 |
| (f) | 2/14/2019 | 4:40 p.m. ET | (816) 420-4632 |
| (g) | 2/14/2019 | 8:46 p.m. ET | (816) 420-4632 |
| (h) | 2/15/2019 | 8:46 a.m. ET | (816) 420-4632 |
| (i) | 2/15/2019 | 4:53 p.m. ET | (816) 420-4632 |
| (j) | 2/15/2019 | 8:46 p.m. ET | (816) 420-4632 |
| (k) | 2/16/2019 | 8:24 a.m. ET | (816) 420-4632 |

| (l)  | 2/16/2019 | 5:34 p.m. ET   | (816) 420-4632 |
| (m)  | 2/17/2019 | 9:50 a.m. ET   | (816) 420-4632 |
| (n)  | 2/18/2019 | 8:11 a.m. ET   | (816) 420-4632 |
| (o)  | 2/18/2019 | 4:52 p.m. ET   | (423) 467-6460 |
| (p)  | 2/19/2019 | 12:44 p.m. ET  | (423) 207-4181 |
| (q)  | 2/20/2019 | 11:56 a.m. ET  | (816) 420-4632 |
| (r)  | 2/20/2019 | 5:06 p.m. ET   | (816) 420-4632 |
| (s)  | 2/21/2019 | 11:00 a.m. ET  | (816) 420-4632 |
| (t)  | 2/21/2019 | 4:35 p.m. ET   | (816) 420-4632 |
| (u)  | 2/22/2019 | 5:31 p.m. ET   | (816) 420-4632 |
| (v)  | 2/23/2019 | 10:58 a.m. ET  | (816) 420-4632 |
| (w)  | 2/23/2019 | 4:48 p.m. ET   | (816) 420-4632 |
| (x)  | 2/24/2019 | 12:27 p.m. ET  | (816) 420-4632 |
| (y)  | 2/25/2019 | 12:55 p.m. ET  | (816) 420-4632 |
| (z)  | 2/25/2019 | 5:52 p.m. ET   | (816) 420-4632 |
| (aa) | 2/26/2019 | 12:52 p.m. ET  | (816) 420-4632 |
| (bb) | 2/26/2019 | 6:08 p.m. ET   | (816) 420-4632 |
| (cc) | 2/27/2019 | 10:56 a.m. ET  | (816) 420-4632 |
| (dd) | 2/28/2019 | 8:58 a.m. ET   | (816) 420-4632 |
| (ee) | 2/28/2019 | 5:03 p.m. ET   | (816) 420-4632 |
| (ff) | 3/1/2019  | 10:49 a.m. ET  | (816) 420-4632 |
| (gg) | 3/1/2019  | 5:38 p.m. ET   | (816) 420-4632 |
| (hh) | 3/4/2019  | 5:20 p.m. ET   | (816) 420-4632 |
| (ii) | 3/6/2019  | 10:31 a.m. ET  | (816) 420-4632 |

| (jj)  | 3/6/2019  | 4:24 p.m. ET   | (877) 283-1536 |
| (kk)  | 3/11/2019 | 5:26 p.m. ET   | (816) 420-4632 |
| (ll)  | 3/12/2019 | 10:44 a.m. ET  | (816) 420-4632 |
| (mm)  | 3/12/2019 | 10:46 a.m. ET  | (816) 420-4632 |
| (nn)  | 3/12/2019 | 5:59 p.m. ET   | (816) 420-4632 |
| (oo)  | 3/13/2019 | 8:07 a.m. ET   | (816) 420-4632 |
| (pp)  | 3/14/2019 | 8:26 a.m. ET   | (816) 420-4632 |
| (qq)  | 3/14/2019 | 4:51 p.m. ET   | (423) 467-6460 |
| (rr)  | 3/15/2019 | 10:40 a.m. ET  | (816) 420-4632 |
| (ss)  | 3/15/2019 | 6:12 p.m. ET   | (816) 420-4632 |
| (tt)  | 3/16/2019 | 10:30 a.m. ET  | (816) 420-4632 |
| (uu)  | 3/17/2019 | 10:35 a.m. ET  | (816) 420-4632 |
| (vv)  | 3/18/2019 | 6:16 p.m. ET   | (816) 420-4632 |
| (ww)  | 3/19/2019 | 8:30 a.m. ET   | (816) 420-4632 |
| (xx)  | 3/19/2019 | 5:10 p.m. ET   | (816) 420-4632 |
| (yy)  | 3/20/2019 | 10:31 a.m. ET  | (816) 420-4632 |
| (zz)  | 3/20/2019 | 5:33 p.m. ET   | (816) 420-4632 |
| (aaa) | 3/21/2019 | 8:49 a.m. ET   | (816) 420-4632 |
| (bbb) | 3/21/2019 | 8:50 a.m. ET   | (816) 420-4632 |
| (ccc) | 3/22/2019 | 5:54 p.m. ET   | (816) 420-4632 |
| (ddd) | 3/23/2019 | 10:01 a.m. ET  | (816) 420-4632 |
| (eee) | 3/23/2019 | 4:33 p.m. ET   | (816) 420-4632 |
| (fff) | 3/28/2019 | 8:28 a.m. ET   | (208) 822-2207 |
| (ggg) | 3/28/2019 | 4:45 p.m. ET   | (816) 420-4632 |

| (hhh) | 3/29/2019 | 10:37 a.m. ET | (816) 420-4632 |
| (iii) | 3/29/2019 | 4:57 p.m. ET | (816) 420-4632 |
| (jjj) | 3/30/2019 | 9:00 a.m. ET | (816) 420-4632 |
| (kkk) | 3/30/2019 | 3:58 p.m. ET | (816) 420-4632 |
| (lll) | 3/31/2019 | 4:41 p.m. ET | (816) 420-4632 |
| (mmm) | 4/1/2019 | 8:46 a.m. ET | (423) 467-6460 |
| (nnn) | 4/3/2019 | 4:43 p.m. ET | (816) 420-4632 |
| (ooo) | 4/4/2019 | 8:13 p.m. ET | (816) 420-4632 |
| (ppp) | 4/4/2019 | 4:34 p.m. ET | (816) 420-4632 |
| (qqq) | 4/5/2019 | 8:25 a.m. ET | (816) 420-4632 |
| (rrr) | 4/5/2019 | 4:18 p.m. ET | (816) 420-4632 |
| (sss) | 4/6/2019 | 8:40 a.m. ET | (816) 420-4632 |
| (ttt) | 4/6/2019 | 3:43 p.m. ET | (816) 420-4632 |
| (uuu) | 4/7/2019 | 11:59 a.m. ET | (816) 420-4632 |
| (vvv) | 4/7/2019 | 4:18 p.m. ET | (816) 420-4632 |
| (www) | 4/8/2019 | 8:25 a.m. ET | (816) 420-4632 |
| (xxx) | 4/8/2019 | 5:27 p.m. ET | (816) 420-4632 |
| (yyy) | 4/9/2019 | 8:26 a.m. ET | (816) 420-4632 |
| (zzz) | 4/9/2019 | 4:48 p.m. ET | (816) 420-4632 |
| (aaaa) | 4/10/2019 | 8:34 a.m. ET | (816) 420-4632 |
| (bbbb) | 4/11/2019 | 4:41 p.m. ET | (816) 420-4632 |
| (cccc) | 4/13/2019 | 8:38 a.m. ET | (816) 420-4632 |
| (dddd) | 4/13/2019 | 5:20 p.m. ET | (816) 420-4632 |
| (eeee) | 4/14/2019 | 8:13 a.m. ET | (816) 420-4632 |

| | | | |
|---|---|---|---|
| (ffff) | 4/17/2019 | 8:25 a.m. ET | (816) 420-4632 |
| (gggg) | 4/17/2019 | 4:59 p.m. ET | (816) 420-4632 |
| (hhhh) | 4/18/2019 | 8:39 a.m. ET | (816) 420-4632 |
| (iiii) | 4/19/2019 | 8:35 a.m. ET | (816) 420-4632 |
| (jjjj) | 4/19/2019 | 8:13 p.m. ET | (816) 420-4632 |
| (kkkk) | 4/20/2019 | 4:17 p.m. ET | (816) 420-4632 |
| (llll) | 4/22/2019 | 1:24 p.m. ET | (816) 420-4632 |
| (mmmm) | 4/22/2019 | 2:06 p.m. ET | (816) 420-4632 |
| (nnnn) | 4/23/2019 | 8:18 a.m. ET | (816) 420-4632 |
| (oooo) | 4/23/2019 | 6:27 p.m. ET | (816) 420-4632 |
| (pppp) | 4/24/2019 | 8:53 a.m. ET | (816) 420-4632 |
| (qqqq) | 4/24/2019 | 7:59 p.m. ET | (816) 420-4632 |
| (rrrr) | 4/25/2019 | 8:43 a.m. ET | (816) 420-4632 |
| (ssss) | 4/25/2019 | 5:33 p.m. ET | (816) 420-4632 |
| (tttt) | 4/26/2019 | 8:53 a.m. ET | (816) 420-4632 |
| (uuuu) | 4/28/2019 | 10:54 a.m. ET | (208) 822-2207 |
| (vvvv) | 4/29/2019 | 8:55 a.m. ET | (816) 420-4632 |
| (wwww) | 4/29/2019 | 4:45 p.m. ET | (816) 420-4632 |
| (xxxx) | 4/30/2019 | 8:44 a.m. ET | (816) 420-4632 |
| (yyyy) | 4/30/2019 | 3:57 p.m. ET | (816) 420-4632 |

41.     On several of the aforementioned calls, Plaintiff answered the call and there was no live person on the call.  Instead, there was dead air for several seconds, leading the Plaintiff to hang-up the call.

42.     Defendant made each of the telephone calls referenced in paragraph forty (40) above to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

43.     Defendant made each of the telephone calls referenced in paragraph forty (40) above to Plaintiff's Cellular Telephone in an attempt to collect the Debt.

44.     Defendant made each of the telephone calls referenced in paragraph forty (40) above directly to Plaintiff's Cellular Telephone despite Defendant possessing actual knowledge of Eva Donohue's Legal Representation of Plaintiff with respect to the Debt and despite Defendant possessing Eva Donohue's contact information.

45.     On or before February 13, 2019, Citi turned the debt over to UCB for collection from Plaintiff.

46.     When Citi turned the Debt over to UCB, consistent with its duty to do so, Citi advised UCB of Undersigned Counsel's legal representation of Plaintiff with respect to the Debt and provided UCB with Undersigned Counsel's contact information.

47.     UCB made each call to Plaintiff's Cellular Telephone, as referenced below, despite UCB possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite possessing Eva Donohue's contact information.

48.     Moreover, UCB made each call to Plaintiff's Cellular Telephone, as referenced below, as Citi's agent on Citi's behalf, and with Citi's consent, knowledge and approval.

49.     On or about February 13, 2019, at approximately 11:55 a.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

50.     UCB made the immediately-aforementioned call from telephone number (800) 210-3679 in an attempt to collect the Debt directly from Plaintiff.

51.     Furthermore, UCB's call to Plaintiff referenced in paragraph forty-nine (49) above constitutes an indirect attempt to collect the Debt by Citi.

52.     On or about February 14, 2019, at approximately 10:12 a.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

53.     UCB made the immediately-aforementioned call from telephone number (800) 210-3679 in an attempt to collect the Debt directly from Plaintiff.

54.     Furthermore, UCB's call to Plaintiff referenced in paragraph fifty-two (52) above constitutes an indirect attempt to collect the Debt by Citi.

55.     On or about February 15, 2019, at approximately 6:50 p.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

56.     UCB made the immediately-aforementioned call from telephone number (800) 925-9018 in an attempt to collect the Debt directly from Plaintiff.

57.     Furthermore, UCB's call to Plaintiff referenced in paragraph fifty-five (55) above constitutes an indirect attempt to collect the Debt by Citi.

58.     When Plaintiff answered the call referenced in paragraph fifty-five (55) above, Plaintiff waited several seconds before hearing a UCB's live agent or representative, "Michael Tucker," come on the line and Plaintiff *again* advised UCB of Eva Donohue's legal representation of Plaintiff with respect to the Debt and *again* demanded that Defendants stop calling him.

59.     On or about February 17, 2019, at approximately 10:00 a.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

60.     UCB made the immediately-aforementioned call from telephone number (800) 925-9018 in an attempt to collect the Debt directly from Plaintiff.

61.     Furthermore, UCB's call to Plaintiff referenced in paragraph fifty-nine (59) above constitutes an indirect attempt to collect the Debt by Citi.

62.     On or about February 18, 2019, at approximately 2:13 p.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

63.     UCB made the immediately-aforementioned call from telephone number (800) 210-3679 in an attempt to collect the Debt directly from Plaintiff.

64.     Furthermore, UCB's call to Plaintiff referenced in paragraph sixty-two (62) above constitutes an indirect attempt to collect the Debt by Citi.

65.     On or about February 20, 2019, at approximately 8:41 p.m. ET, UCB made a telephone call to Plaintiff's Cellular Telephone using an ATDS, PTDS, and/or APV.

66.     UCB made the immediately-aforementioned call from telephone number (800) 210-3679 in an attempt to collect the Debt directly from Plaintiff.

67.     Furthermore, UCB's call to Plaintiff referenced in paragraph sixty-five (65) above constitutes an indirect attempt to collect the Debt by Citi.

68.     On or about March 4, 2019 Citi sent an e-mail directly to Plaintiff in an attempt to collect the Debt.  Please see a true and correct copy of said email labeled as Exhibit "B."

69.     On or about March 5, 2019 Citi sent a letter to Plaintiff regarding the Debt.  Please see attached a true and correct copy of said letter labeled as Exhibit "C."

70.     Citi's immediately-aforementioned letter stated "[w]e have received your inquiry requesting information regarding the [D]ebt you have with THE HOME DEPOT CONSUMER and appreciate the opportunity to respond."  *See* Ex. C.

71.     Citi's letter referenced in paragraph sixty-nine (69) above indicates that Citi received the Notice of Representation which was sent to Citi on or about February 5, 2019.  *See* Exs. A and C.

72.     More specifically, Citi's letter referenced in paragraph sixty-nine (69) above shows that Citi possessed actual knowledge of Eva Donohue's representation of Plaintiff with respect to the Debt and possessed Eva Donohue's contact information, and also shows that Citi received notice that Plaintiff revoked any purported prior express consent allowing Citi or UCB to make

calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

73.    Plaintiff has not been able, due to both professional and personal commitments, as well as the continued and increasing stress associated with the continued barrage of Debt collection calls, to record the specifics (as done above) on each and every call made to Plaintiff.  Plaintiff asserts, however, that the above-referenced calls are but a sub-set of the calls made in violation of the FCCPA and TCPA.  Further, Defendant is in the best position to determine and ascertain the number and methodology of calls made to Plaintiff.

74.    As a direct result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, and confusion, believing that repeatedly requesting that Defendants cease calling Plaintiff regarding the Debt was wholly ineffective, that retaining Eva Donohue with respect to the Debt and advising Defendants of the same was wholly ineffective, and that the frequent, repeated debt collection attempts regarding would simply have to be endured.

75.    It is Defendants' corporate policy to use an ATDS, a PTDS, or an APV when attempting to collect consumer debts, including the Debt (hereinafter, "Corporate Policy").

76.    Defendants employed their Corporate Policy of using an ATDS, a PTDS, or an APV when Defendants made telephone calls to Plaintiff's Cellular Telephone in this case.

77.    Defendants made telephone calls to Plaintiff's Cellular Telephone with no effective way for Plaintiff to remove his Cellular Telephone number from Defendants' telephone dialing systems.

78.    Defendants made calls, or caused calls to be made, to Plaintiff with no effective way for Defendants to remove the telephone number from Defendants' telephone dialing systems.

79.    Defendants' Corporate Policy provides no effective way for a consumer to effectively revoke any prior existing consent to be called by an ATDS, PTDS, or APV to make

Defendants cease calling Cellular Telephone.

80.     Defendants' Corporate Policy and procedures are structured as to continue to call individuals like Plaintiff using an ATDS, a PTDS, and/or an APV, regardless of how many times said individuals request Defendants cease calling a cellular telephone regarding a debt owed to Defendants.

81.     Upon information and belief, Defendants engaged in a pattern and practice of unlawful debt collection and invasion of privacy, repeatedly and willfully calling consumers' cellular telephones in an attempt to collect debts, using an ATDS, a PTDS, and/or an APV despite lacking consumers' prior express consent to do so.

82.     Defendants willfully, knowingly and repeatedly undertake these practices to increase revenue and profitability at the direct expense of consumers' livelihoods and privacy.

83.     Based on Defendants' pattern and practice described herein, this Court should grant significant and substantial punitive damages sufficient enough to prevent Defendants from continuing this pattern and practice and to deter such similar future conduct in the Middle District of Florida.

84.     Plaintiff states that the imposition of a substantial punitive damage award is required in order to force Defendants to comply with well-established federal and state privacy and debt collection laws.

85.     Plaintiff retained Eva Donohue as well as Leavengood, Dauval & Boyle, P.A., d/b/a LeavenLaw for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay his attorneys a reasonable fee for their services.

86.     Despite Defendants receiving notice and possessing actual knowledge of Eva Donohue's representation of Plaintiff with respect to the Debt, Defendants continue to attempt to collect the Debt directly from Plaintiff in violation of the FCCPA.

87.     Defendants' conduct, as described above, is a knowing, willful, and continuing violation of Plaintiff's rights, as enumerated under Florida state law.

88.     Given Defendants' conduct and its apparent intention and ability to continue to collect the Debt directly from Plaintiff in violation of said debt collection and privacy laws, Plaintiff has no adequate remedy at law.

89.     Florida Statutes, Section 559.77 provides for the award of $1,000.00 statutory damages, actual damages, punitive damages, declaratory and injunctive relief, and an award of attorneys' fees and costs to Plaintiff, should Plaintiff prevail in this matter against Defendants.

90.     United States Code, Title 15, Section 1692k provides for the award of up to $1,000.00 statutory damages, actual damages, costs, and an award of attorneys' fees to Plaintiff, should Plaintiff prevail in this matter against UCB.

91.     United States Code, Title 47, Section 227(b)(3) provides for the award of $500.00 or actual damages, whichever is greater, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or pre-recorded voice to Plaintiff's Cellular Telephone in violation of the TCPA or the regulations proscribed thereunder.

92.     Additionally, the TCPA, Section 227(b)(3) allows the trial court to increase the damages up to three times, or $1,500.00, for each telephone call made, directly or indirectly, using any automatic telephone dialing system or an artificial or prerecorded voice to Plaintiff's Cellular Telephone in willful or knowing violation of the TCPA or the regulations proscribed thereunder.

93.     As of the date of this complaint, Defendants have not initiated a law suit in an effort to collect the Debt.  Likewise, no final judgment with respect to the Debt has been obtained by, or transferred to, Defendants.

**COUNT ONE:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORDA STATUTES, SECTION 559.72(7)**

17

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

94.     Defendants are each subject to, and both violated the provisions of, Florida Statutes, Section 559.72(7) by collecting consumer Debt from Plaintiff through means which can reasonably be expected to abuse or harass Plaintiff.

95.     Specifically, via the Notice of Representation, Citi received notice and possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt, possessed Eva Donohue's contact information, received notice that Plaintiff explicitly revoked any purported prior express consent to receive calls from Citi or its agents on his Cellular Telephone made using an ATDS, PTDS, and/or APV, and received notice that any communications regarding the Debt should be directed to Eva Donohue's office.

96.     Moreover, UCB possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt, possessed Eva Donohue's contact information, and received notice that Plaintiff revoked any purported prior express consent to receive calls from UCB on his Cellular Telephone made using an ATDS, PTDS, and/or APV both from Citi and from UCB's telephone conversations with Plaintiff.

97.     Despite Plaintiff's repeated requests that Defendants cease calling him regarding the Debt and direct any communications regarding the Debt to Eva Donohue, Citi made *at least* one hundred three (103) calls to Plaintiff's Cellular Telephone between February 12, 2019 and April 30, 2019, repeatedly calling Plaintiff two (2) to three (3) times per day in it attempts to collect the Debt directly from Plaintiff.

98.     Moreover, despite Plaintiff's repeated requests that Defendants cease calling him regarding the Debt and direct any communications regarding the Debt to Eva Donohue, UCB made *at least* six (6) calls to Plaintiff's Cellular Telephone between February 13, 2019 and February 20,

2019 in its attempts to collect the Debt on Citi's behalf, and with Citi's consent, knowledge, and approval.

99.     UCB's immediately-aforementioned telephone calls constitute an indirect attempt by Citi to collect the Debt from Plaintiff.

100.     Defendants' conduct served no purpose other than to annoy and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone in an attempt to collect the Debt, leading Plaintiff to believe that despite Plaintiff's repeated demands that such calls cease and be directed to Eva Donohue as Plaintiff's attorney with respect to the Debt, Defendants could and would continue to communicate directly with Plaintiff up to three (3) times a day—circumventing Eva Donohue's legal representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to Defendants on the Debt.  Defendants refused to cease engaging in such unlawful debt collection conduct.

101.     Defendants' willful, and flagrant violation of, *inter alia*, the Florida Consumer Collections Practices Act as a means to collect a Debt, constitutes unlawful conduct and harassment as is contemplated under Florida Statutes, Section 559.72(7).

102.     As a direct and proximate result of both Defendants' actions, Plaintiff sustained damages as defined by Florida Statutes, Section 559.77.

**COUNT TWO:**
**UNLAWFUL DEBT COLLECTION PRACTICE –**
**VIOLATION OF FLORIDA STATUTES, SECTION 559.72(18)**

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

103.     Defendants are each subject to, and both violated the provisions of, Florida Statutes, Section 559.72(18) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing actual knowledge that Plaintiff retained Eva Donohue with respect

to the Debt and after possessing Eva Donohue's contact information.

104. Specifically, Plaintiff provided Citi with notice and actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and provided Eva Donohue's contact information via the Notice of Representation.

105. Moreover, Citi, in response to the Notice of Representation, sent a letter to Plaintiff acknowledging Plaintiff's Notice of Representation.

106. Additionally, UCB possessed actual knowledge of Eva Donohue's representation of Plaintiff and Eva Donohue's contact information both from Citi and from UCB's telephone conversations with Plaintiff.

107. Despite Defendants possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite possessing Eva Donohue's contact information, Citi made *at least* one hundred three (103) calls directly to Plaintiff's Cellular Telephone and sent *at least* one (1) e-mail directly to Plaintiff in its attempts to collect the Debt from Plaintiff.

108. Similarly, despite Defendants possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite possessing Eva Donohue's contact information, UCB made *at least* six (6) calls directly to Plaintiff's Cellular Telephone in its attempts to collect the Debt from Plaintiff on Citi's behalf, and with Citi's consent, knowledge, and approval.

109. UCB's immediately-aforementioned telephone calls constitute an indirect attempt by Citi to collect the Debt from Plaintiff.

110. As such, Citi and UCB each attempted to collect the Debt directly from Plaintiff, a known represented party in violation of Florida Statutes, Section 559.72(18).

111. As a direct and proximate result of Defendants' actions, Plaintiff sustained damages

as defined by Florida Statutes, Section 559.77.

## COUNT THREE:
### FAIR DEBT COLLECTION PRACTICES ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692c(a)(2)</u>

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

112.    UCB is subject to, and violated the provisions of, 15 United States Code, Section 1692c(a)(2) by intentionally and repeatedly communicating directly with Plaintiff after receiving notice and possessing knowledge of Plaintiff's representation by legal counsel with respect to the Debt.

113.    Specifically, UCB possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and possessed Eva Donohue's contact information both from Citi and from UBC's telephone conversations with Plaintiff.

114.    Despite UCB possessing actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt and despite possessing Eva Donohue's contact information, UCB made *at least* six (6) calls directly to Plaintiff's Cellular Telephone between February 13, 2019 and February 20, 2019 in its attempts to collect the Debt.

115.    As a direct and proximate result of UCB's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT FOUR:
### FAIR DEBT COLLECTION PRACTICES ACT –
### <u>VIOLATION OF 15 UNITED STATES CODE, SECTION 1692d</u>

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

116.    UCB is subject to, and violated the provisions of 15 United States Code, Section 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or

abuse Plaintiff in connection with the collection of the Debt.

117.    Specifically, UCB possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt, possessed Eva Donohue's contact information, and received notice that Plaintiff revoked any purported prior express consent to receive calls from UCB on his Cellular Telephone made using an ATDS, PTDS, and/or APV both from Citi and from UBC's telephone conversations with Plaintiff.

118.    Despite Plaintiff's repeated requests that Defendants cease calling him regarding the Debt and direct any communications regarding the Debt to Attorney Eva Donohue, UCB made *at least* six (6) calls to Plaintiff's Cellular Telephone between February 13, 2019 and February 20, 2019 in its attempts to collect the Debt.

119.    UCB's conduct served no purpose other than to abuse and harass Plaintiff into paying the Debt by continuing to impermissibly and unlawfully call Plaintiff's Cellular Telephone in an attempt to collect the Debt, leading Plaintiff to believe that despite Plaintiff's repeated demands that such calls cease and be directed to Eva Donohue as Plaintiff's attorney with respect to the Debt, UCB could and would continue to communicate directly with Plaintiff up to three (3) times a day—circumventing Eva Donohue's legal representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to Defendants on the Debt.  UCB refused to cease engaging in such unlawful debt collection conduct.

120.    As a direct and proximate result of UCB's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

## COUNT FIVE:
## UNLAWFUL DEBT COLLECTION PRACTICE –
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1692e and e(10)

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

121.     UCB is subject to, and violated the provisions of, 15 United States Code, Section 1692e and e(10) by using false representations and deceptive means in attempting to collect the Debt.

122.     Specifically, UCB possessed actual knowledge of Eva Donohue's legal representation of Plaintiff with respect to the Debt, possessed Eva Donohue's contact information, and received notice that Plaintiff revoked any purported prior express consent to receive calls from UCB on his Cellular Telephone made using an ATDS, PTDS, or APV both from Citi and from UBC's telephone conversations with Plaintiff.

123.     Despite Plaintiff's repeated requests that Defendants cease calling him regarding the Debt and direct any communications regarding the Debt to Attorney Eva Donohue, UCB made *at least* six (6) calls to Plaintiff's Cellular Telephone between February 13, 2019 and February 20, 2019 in its attempts to collect the Debt.

124.     UCB's above-referenced conduct attempts to deceive and mislead Plaintiff into believing that Plaintiff must immediately make payment to Defendants on the Debt or continue to endure UCB's unlawful, repeated, and invasive attempts to collect the Debt.

125.     As a direct and proximate result of UCB's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

**COUNT SIX:**
**FAIR DEBT COLLECTION PRACTICES ACT –**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1692f**

Plaintiff re-alleges paragraphs one (1) through ninety-three (93) as if fully restated herein and further states as follows:

126.     UCB is subject to, and violated the provisions of, 15 United States Code, Section 1692f by using unfair or unconscionable means in an attempt to collect the Debt.

127.     Specifically, UCB possessed actual knowledge of Eva Donohue's legal

23

representation of Plaintiff with respect to the Debt, possessed Eva Donohue's contact information, and received notice that Plaintiff revoked any purported prior express consent to receive calls from UCB on his Cellular Telephone made using an ATDS, PTDS, and/or APV both from Citi and from UBC's telephone conversations with Plaintiff.

128.    Despite Plaintiff's repeated requests that Defendants cease calling him regarding the Debt and direct any communications regarding the Debt to Eva Donohue, UCB made *at least* six (6) calls to Plaintiff's Cellular Telephone between February 13, 2019 and February 20, 2019 in its attempts to collect the Debt.

129.    UCB's immediately-aforementioned communications unfairly and unconscionably attempted to lead Plaintiff to believe that despite Plaintiff's repeated demands that such calls cease and be directed to Eva Donohue as Plaintiff's attorney with respect to the Debt, UCB could and would continue to communicate directly with Plaintiff up to three (3) times a day—circumventing Eva Donohue's legal representation of Plaintiff with respect to the Debt—unless and until Plaintiff made payment to Defendants on the Debt.

130.    As a direct and proximate result of UCB's actions, Plaintiff sustained damages as defined by 15 United States Code, Section 1692k.

### COUNT SEVEN:
### TELEPHONE CONSUMER PROTECTION ACT-
### VIOLATION OF 47 UNITED STATES CODE, SECTION 227(b)(1)(A)

Plaintiff re-alleges paragraphs one (1) through one hundred-thirty (130) as if fully restated herein and further states as follows:

131.    Defendants are each subject to, and both violated the provisions of, 47 United States Code, Section 227 (b)(1)(A) by using an ATDS, PTDS, and/or APV to make a call a telephone number assigned to a cellular telephone service without Plaintiff's prior express consent.

132.    At no time herein did Defendants possess Plaintiff's prior express consent to call

Plaintiff's Cellular Telephone using an ATDS, a PTDS, and/or an APV.

133.   If Defendants contend they possessed such consent, Plaintiff revoked any such purported consent each and every time Plaintiff requested that Defendants cease calling Plaintiff regarding the Debt and revoked any such purported consent each and every time Plaintiff advised Defendants that he retained Eva Donohue with respect to the Debt, directly or indirectly.

134.   Additionally, if Defendants contends the referenced phone calls were made for "informational purposes only," they nevertheless lacked the required prior express consent necessary to place such informational calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

135.   Between February 2019 and April 2019, despite lacking Plaintiff's prior express consent and despite Plaintiff repeatedly requesting that Defendants cease calling him regarding the Debt, Citi made *at least* one hundred three (103) calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

136.   Similarly, between February 13, 2019 and February 20, 2019, despite lacking Plaintiff's prior express consent and despite Plaintiff repeatedly requesting that Defendants cease calling him regarding the Debt, UCB made *at least* six (6) calls to Plaintiff's Cellular Telephone using an ATDS, PTDS, or APV.

137.   UCB made the immediately-aforementioned calls as Citi's agent on Citi's behalf, and with Citi's consent, knowledge, and approval.

138.   The phone calls made by Defendants complained of herein are the result of a repeated willful and knowing violation of the TCPA.

139.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered:

   a.   The periodic loss of his Cellular Telephone service and the cost associated therewith;

b.      Lost material costs associated with the use of peak time minutes allotted under his Cellular Telephone service contract; and

c.      Stress, anxiety, loss of sleep, invasion of privacy, and deterioration of relationships, both personal and professional, as a result of the repeated willful and knowing calls placed in violation of the TCPA.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.      Judgment against Defendants declaring that Defendants violated the FCCPA;

b.      Judgment against Defendants for maximum statutory damages for violations of the FCCPA;

c.      Judgment providing injunctive relief, prohibiting Defendants from further engaging in conduct that violates the FCCPA and the TCPA;

d.      Judgment against Defendants for statutory damages in the amount of $500.00 for each of Defendants' telephone calls that violated the TCPA;

e.      Judgment against Defendants for treble damages in the amount of an additional $1,000.00 for each telephone call that violated the TCPA for which Defendants acted knowingly and/or willfully;

f.      Actual damages in an amount to be determined at trial;

g.      An award of attorneys' fees and costs; and

h.      Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data—pertaining to this litigation as required by law.

Respectfully submitted,

**LEAVENLAW**

/s/ *Ian R. Leavengood*
**[X] Ian R. Leavengood, Esq., FBN 0010167**
☐ **Sean E. McEleney, Esq., FBN 0125561**
☐ **Kelly C. Burke, Esq., FBN 0123506**
Northeast Professional Center
3900 First Street North, Suite 100
St. Petersburg, FL 33703
Phone: (727) 327-3328
Fax: (727) 327-3305
consumerservice@leavenlaw.com
smceleney@leavenlaw.com
kburke@leavenlaw.com

~and~

**Eva M. Donohue, Esq., FBN 576581**
**EVA M. DONOHUE, P.A.**
P.O. Box 5074
Lakeland, FL 33807
Phone: (863) 687-6400
Fax: (863) 687-6440
info@emdlawfirm.com
*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF FLORIDA       )
                          )
COUNTY OF _Hillsborough_ )

Plaintiff KENNETH DUKETT, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

6. Each and every exhibit which has been attached to this Complaint, if any, is a true and correct copy of the original.

7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated any exhibits, except that some of the attached exhibits, if any, may contain some of my own handwritten notations.

_____
Kenneth Dukett

Subscribed and sworn to before me
this _3_ day of _June_, 2019.

_____
Notary Public

My Commission Expires:

_January 9, 2023_

Proof of I.D. _Driver's License_



JOSEPHINE A. MAESTAS
MY COMMISSION # GG 289685
EXPIRES: January 9, 2023
Bonded Thru Notary Public Underwriters